**TRANSPORTATION–COMMUNICATION EMPLOYEES UNION, and System Board of Adjustment No. 45, Plaintiffs,**

v.

**GRAND TRUNK WESTERN RAILROAD COMPANY, Defendant.**

Civ. No. 87 74196.

United States District Court,
E.D. Michigan, S.D.

Feb. 23, 1988.

Joseph Guerrieri, Jr. and Edgar N. James, Washington, D.C., Daniel Greenspon, Detroit, Mich., for plaintiffs.

I. Michael Greenberger, Washington, D.C., Robert I. Schellig, Jr., Detroit, Mich., for defendant.

## MEMORANDUM OPINION
## AND ORDER

ANNA DIGGS TAYLOR, District Judge.

The present action was instituted by Plaintiffs to enjoin the Defendant from negotiating directly with its employees for termination and severance agreements. This Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. §§ 1331 and 1337, and 45 U.S.C. § 151, *et. seq.* A hearing on Plaintiffs' motion for a preliminary injunction was held on December 7, 1987. This memorandum memorializes the Court's findings of fact and conclusions of law, which were outlined on the record at the conclusion of the hearing.

### FINDINGS OF FACT

Defendant Grand Trunk Western Railroad Company is a rail carrier within the meaning of, and hence subject to, the Railway Labor Act, 45 U.S.C. § 151 *et seq.* It operates primarily in Michigan and its headquarters are located in Detroit.

Plaintiff Transportation–Communication Employees Union ("TCU"), formerly the Brotherhood of Railway, Airline and Steamship Clerks ("BRAC"), is the labor union which represents the Grand Trunk's clerical employees. It represents approximately 1,000 of the railroad's 3,900 employees.

These parties are signatories to a February 7, 1965 national mediation agreement, as amended locally only with respect to Grand Trunk and known as the "Protective Agreement." Under the terms of this agreement, certain employees represented by TCU are "protected" employees who, absent a decline in the company's business, are to be retained and only furloughed. The agreement expressly recognizes an employee's right to voluntarily leave the railroad's service. Protected employees are given the option of a separation allowance during furlough or resignation.

In addition to its substantive provisions, the Protective Agreement contains an arbitration clause which provides, in pertinent part, that "[a]ny dispute involving the interpretation or application of any of the terms of this agreement ... may be referred by either party to the appropriate adjustments" (*i.e.,* arbitration) board.

Subsequent to the February 7th Protective Agreement, TCU and Grand Trunk negotiated on several occasions over amendments to the agreement.

Between December of 1982 and February of 1984, Grand Trunk implemented, on 4 occasions, voluntary individual separation programs whereby members of the TCU (then BRAC) bargaining unit retired or resigned from service in exchange for a lump-sum separation allowance. Those programs were designed to reduce the number of clerks in the railroad's service. Union officials did not object to the programs, or insist upon the union's participation in negotiating them, or indicate that they constituted a violation of the Railway Labor Act.

In February of 1984, Grand Trunk implemented its 5th individual separation program. For the first time, TCU officials raised an objection thereto by letter dated February 1, 1984 from the General Chairman of the System Board, Mr. Michael R. Fauss. The letter asked that Grand Trunk cease and desist, and it expressed the union's position that such direct dealings with the employees violated the Railway Labor Act. The union, however, did not pursue the issue further or bring any objection either to court or to arbitration. Thus, the February 1984 separation program proceeded to completion.

Between June and October of 1985, the parties negotiated to amend the Protective Agreement to permit voluntary separations. Negotiations on that issue were terminated when the parties could not agree.

In 1985 and 1986, no separation programs were implemented for TCU members due to the relatively few clerks on protected furlough status. Grand Trunk did, however, write to the union to state that it stood on its right to proceed with such programs as necessary.

On November 9, 1987, Grand Trunk initiated its 6th separation program. Bulletins were posted at various locations across its

lines announcing that applications would be accepted through December 1st for a lump-sum separation allowance of $36,000, plus any vacation and sick pay due under the collective bargaining agreement. These applications would be accepted from employees either in active service or on protected furlough status. Employees who accepted severance would be required to sign a release waiving all rights to any other protective benefits, seniority rights or pending grievances. No separations were to be granted prior to December 15, 1987.

On November 9th and 10th, TCU officials posted notice urging its members not to apply for any individual separation payments, and accusing the railroad of violating the Railway Labor Act by reinstituting this program. In addition, Chairman Fauss wrote a letter to Grand Trunk on November 10th reiterating the union's position that the offer violated the Act.

Notwithstanding TCU's assertions, approximately 114 union-represented employees had voluntarily applied for separation payments as of November 19, 1987.

On November 19, 1987, Plaintiffs filed the instant lawsuit and motion for a preliminary injunction to enjoin Grand Trunk's allegedly unlawful activities.

CONCLUSIONS OF LAW

To obtain a preliminary injunction in the Sixth Circuit, Plaintiffs must establish the following 4 prerequisites:

(1) a strong or substantial likelihood of success on the merits;

(2) that irreparable harm or injury would be sustained by Plaintiffs absent injunctive relief;

(3) that the threatened injury to Plaintiffs outweighs any harm that might occur to others by entry of the injunctive relief; and

(4) that issuance of the injunction would serve the public interest.

See *Lakeshore Term. & Pipeline Co. v. Defense Fuel Supply Center*, 777 F.2d 1171, 1172–73 (6th Cir.1985); *White Consol. Indus., Inc. v. Whirlpool Corp.*, 612 F.Supp. 1009, 1030 (N.D.Ohio 1985).

Applying the foregoing rules of law to the case at bar, the Court finds that Plaintiffs have failed to demonstrate the necessary prerequisites for entry of a preliminary injunction.

Plaintiffs have asserted that the irreparable injury prerequisite is satisfied by the fact that Grand Trunk's direct dealings with TCU-represented employees assaults the foundation of the Railway Labor Act, threatens industrial peace, and undermines the union's status as the exclusive bargaining representative of its unit.

Contrary to Plaintiffs' assertion, there is no demonstration of irreparable injury which would warrant the extraordinary relief requested. Plaintiffs' argument on this issue is not sustained by the facts. TCU's status as a bargaining representative remains whole so long as it is an active representative and fairly represents its membership on matters within its jurisdiction. The union *is* vigorously pursuing its objection to the severance program. Grand Trunk's continued direct dealing with the employees on this matter is neither an irreparable injury to the integrity of the union nor does it constitute active representation of union members by the employer.

Plaintiffs also argued that irreparable injury will be sustained by those employees now on furlough who will be recalled to fill the vacancies created by this program, in order of their seniority, as the contract requires. Plaintiffs' argument is that those persons may not wish to accept the assignments and will be irreparably damaged by the loss of seniority which will occur if they refuse to return to work.

This argument similarly does not warrant entry of a preliminary injunction. The furloughed employees cannot claim any breach of contract for the following reasons: (1) those employees are not named Plaintiffs; (2) even if they were parties to this litigation, furloughed employees cannot complain about recall procedures and rights negotiated into the contracts governing their employment merely because they prefer to continue furlough, with benefits, than to work; (3) the employees already

have exercised the option to take furlough with certain monthly payments and with the requirement to return to work at *whatever locations become available;* and (4) employees recalled from furlough will be, and have been, recalled in order of seniority under the contract.

Defendant Grand Trunk, on the other hand, has a very strong interest in having these separations completed before the new year begins in 1988. For each employee who is still with the company as of January 1, 1988, the railroad *and* the employee will have to pay $6,400 and $3,400, respectively, in additional retirement tax contributions.

Even if the prerequisite of irreparable injury had been demonstrated, it does not appear to the Court that Plaintiffs have demonstrated a likelihood of success on the merits.

Plaintiffs have argued that Grand Trunk's implementation of the separation program violates the fundamental principles of labor law because the employer is circumventing a certified collective bargaining representative by negotiating individual contracts with its employees.

■ Individual contracts, particularly individual offers and acceptances of retirement or resignation, *are* lawful, however, if they are not inconsistent with or have been authorized by the applicable collective bargaining agreement between the parties, either expressly or impliedly through the past practices of the parties. *IAMAW v. Ill. Central Gulf R.R.,* 102 Lab Cas. ¶ 11,345 (S.D.Ill.1984) [Available on WESTLAW, 1984 WL 1451]; *BRAC v. Atchison, Topeka and Santa Fe Ry.,* No. 86-C-3793 (N.D.Ill.1987) [Available on WESTLAW, 1987 WL 6866].

■ Under the Railway Labor Act, this Court's jurisdiction to adjudicate a dispute depends upon whether that dispute is "major" or "minor". A major dispute is a matter which rises to the level of an unfair labor practice; it involves a unilateral change in working conditions. *Elgin, J. & E. Ry. v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 1289, 89 L.Ed. 1886 (1945); *BRC v. Norfolk & W. Ry.,* 745 F.2d 370,

374 (6th Cir.1984). A minor dispute is one in which the disputed action may be arguably justified by an existing agreement or the practices of the parties thereunder. *BRC v. Norfolk & W. Ry., supra; Local 1477 UTU v. Baker,* 482 F.2d 228, 231 (6th Cir.1973).

Plaintiffs have argued at length, both in their briefs and at the hearing, that there were no past practices between these parties creating an implied agreement authorizing Grand Trunk to unilaterally implement the separation program.

Nevertheless, the Court finds this to be a minor dispute subject to mandatory arbitration. The dispute concerns the applicability of the labor agreement to the practices of the employer. There is certainly an arguable issue, fit for arbitration, regarding past practices between these parties inasmuch as this is apparently the 6th time that Grand Trunk has conducted this type of separation program during the term of the parties' contract. Between December of 1982 and February of 1984, Grand Trunk implemented, on 4 occasions, voluntary separation programs resulting in 86 individual separation agreements. In February of 1984, the railroad implemented its 5th separation program resulting in 26 individual separation agreements. Although TCU lodged an objection to this 5th program, *not once* has the matter been litigated or arbitrated by the union.

In addition, the individual separation agreements arguably are consistent with, and authorized by, the express terms of the 1965 Protective Agreement. The compensation to be awarded upon resignation or retirement has been left to Grand Trunk, as the employer, and the individual employees.

■ Whenever a court is in doubt as to whether a dispute is major or minor, the court must construe the dispute as a minor one. *BLE v. Atchinson, T. & S.F. Ry.,* 768 F.2d 914, 920 (7th Cir.1985).

Further support for mandatory arbitration is found in Article VII of the 1965 Agreement, as amended, which specifically states that "[a]ny dispute involving the in-

terpretation or application of any of the terms of th[e] Agreement ... may be referred by either party to the appropriate tribunal of the National Railroad Adjustment Board or a system group or regional board of adjustment ... [.]"

Plaintiffs' present challenge to Grand Trunk's separation program raises, at most, an arbitrable minor dispute outside of this Court's jurisdiction. Entry of a preliminary injunctive order in derogation of an express arbitration clause, whether statutory or contractual, is always a disservice to the public interest.

It is unlikely, moreover, that TCU will prevail on the merits of its claim.

Plaintiffs' reference to three other cases in which the union (TCU) obtained preliminary and permanent relief against railroad carriers for implementing buy-out programs virtually identical to the one at issue does not change this result. *See BRAC v. Chesapeake & Ohio Railway Co.*, 115 L.R. R.M. 3635 (N.D.Ohio 1983) [Available on WESTLAW, 1983 WL 1754]; *Southern Pacific Trans. Co. v. BRAC*, 636 F.Supp. 57 (D.Utah 1986); *IAMAW v. Soo Line R.R.*, Civ. No. 4–86–353 (D.Minn.1986) [Available on WESTLAW, 1986 WL 8931], *aff'd*, 833 F.2d 730 (8th Cir.1987). Those cases clearly are distinguishable from the instant case. There, the railroads either concededly had *no* past practice or obviously had insubstantial evidence of an express or implied collective bargaining agreement which authorized the employer's conduct.

Finally, the Court finds that entry of a preliminary injunction would cause substantial harm to the Defendant railroad and would not serve the public interest.

Plaintiffs have argued that an injunction cannot possibly harm the Grand Trunk. It does appear to this Court, however, that the railroad would be substantially harmed if the Court were to enjoin the separation program. As previously stated, both Grand Trunk *and* the employees seeking separation have a strong financial interest in having all separations completed before January 1, 1988. Otherwise, they will be obligated to pay thousands of dollars per employee in additional retirement tax contributions.

The harm that would result to the public interest also mandates denial of Plaintiffs' motion for a preliminary injunction. Prior to Grand Trunk's November 9, 1987 announcement of the separation program, various union members had written letters expressing support for a resumption of the railroad's voluntary separation program. Approximately 114 union-represented employees had voluntarily applied for the program as of November 19, 1987, notwithstanding Plaintiffs' notices urging its members not to apply for individual separation payments, and accusing the railroad of violating the Railway Labor Act. "It is undisputable that an employee has an absolute right to resign from his job; it seems to be a logical extension of this concept to go further and conclude that an employee has the right to resign in exchange for a monetary consideration." *System Fed. No. 69 v. Florida East Coast Ry.*, Award No. 4733, slip op. at 30 (NRAB 2d Div.1965).

For the foregoing reasons, IT IS ORDERED that Plaintiffs' motion for a preliminary injunction must be and hereby is DENIED.

IT IS SO ORDERED.