**RICHMOND, FREDERICKSBURG & POTOMAC RAILROAD COMPANY, Plaintiff–Appellee,**

v.

**TRANSPORTATION COMMUNICATIONS INTERNATIONAL UNION, Defendant–Appellant.**

No. 92–1007.

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1992.

Decided Aug. 17, 1992.

As Amended Sept. 10, 1992.

Joseph Guerrieri, Jr., Guerrieri, Edmond & James, Washington, D.C., argued (John A. Edmond, Mark Masling, Guerrieri, Edmond & James, Washington, D.C., Mitchell M. Kraus, General Counsel, Transp. Communications Intern., Union, Rockville, Md., on the brief), for defendant-appellant.

I. Michael Greenberger, Shea & Gardner, Washington, D.C., argued (Mark S. Raffman, Timothy P. Brooks, on the brief) for plaintiff-appellee.

Before WILKINSON and HAMILTON, Circuit Judges, and HOWARD, United States District Judge for the Eastern District of North Carolina, sitting by designation.

## OPINION

WILKINSON, Circuit Judge:

This case arises out of a labor dispute between a railroad and a union that was initially submitted to arbitration. The railroad and union both agreed to submit to an arbitrator the question of whether the railroad could make unilateral severance offers to its clerical employees. The arbitrator decided in favor of the union. The railroad then sought to have the arbitrator's decision overturned in the district court, however, and the court entered summary judgment in favor of the railroad. In so doing, we think the district court failed to accord proper deference to the arbitrator and improperly deprived the union of the benefit of its agreement to submit the dispute to final resolution by an arbitrator. Accordingly, we reverse and remand with directions to reinstate the arbitration award.

## I.

In April 1990, the Richmond, Fredricksburg & Potomac Railroad Co. (RF & P) offered to make severance payments to each clerical employee at its Potomac Yard facility who would agree to retire. The severance offer was designed to create room for clerks who, because of a decline in business, were being paid to sit at home under a lifetime labor protection provision in their collective bargaining agreement. The clerks' union, Transportation Communications International Union (TCU), contended that RF & P's unilateral severance offer was invalid. The union argued that the railroad could not legally negotiate with individual employees, but was required to bargain with the union. TCU refused to assent to the severance offer unless RF & P would agree to higher severance payments.

RF & P refused to bargain with the union, but ultimately agreed to submit the dispute to expedited arbitration in order "[t]o avoid the unnecessary expense and possible delays that would result from litigation." The parties agreed to submit to arbitration the question "whether the RF & P can unilaterally separate employees without an agreement with TCU." The arbitrator reviewed the briefs of the parties and

conducted a hearing.[1] He found that RF & P had failed to establish any contractual authority to deal directly with employees over severance payments, and that there was no established practice between the parties on the matter. The arbitrator also cited federal district court opinions finding a duty under the Railway Labor Act (RLA) to bargain with the union over questions of "lump-sum buy-outs." On these bases, the arbitrator ruled in favor of the union.

RF & P then filed this suit seeking to set aside the arbitration award. The district court granted RF & P's motion for summary judgment, holding that the arbitrator exceeded the scope of the parties' submission in basing his award on the requirements of the RLA and suggesting that the arbitrator's legal analysis was flawed. 776 F.Supp. 1109 (E.D.Va.1991).

The union now appeals that judgment.

## II.

■ Our decision in this case rests upon a reluctance to undercut a process whose importance to labor-management relations has been reaffirmed repeatedly by Congress and the courts. By submitting a dispute to arbitration, labor and management can secure a decisive resolution of their differences without the delay inherent in litigation or the disruption of a strike or lockout. Arbitration, in this sense, is "the substitute for industrial strife." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409 (1960). It is a "major factor in achieving industrial peace," *id.*—"a vital force in establishing confidence and minimizing confusion at all levels of the labor-management relationship and ... a major constructive force in the collective bargaining process itself." Frank Elkouri & Edna A. Elkouri, *How Arbitration Works* 852 (4th ed. 1985).

The courts have long recognized that arbitration can succeed in achieving these goals only to the extent it is accorded final-

ity by the judiciary. *See United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). "[T]he effectiveness of any pro-arbitration policy is dependent, in the first instance, on a limited scope of judicial review of the arbitrator's determination." *U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 360, 91 S.Ct. 409, 414, 27 L.Ed.2d 456 (1971) (Harlan, J., concurring). Thus, judicial review of an arbitration award is "among the narrowest known to the law." *Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 91, 99 S.Ct. 399, 401, 58 L.Ed.2d 354 (1978). "Every presumption is in favor of the validity of the award." *Burchell v. Marsh*, 58 U.S. (17 How.) 344, 351, 15 L.Ed. 96 (1855).

In this case the district court offered two reasons for overturning the strong presumption in favor of respecting the parties' choice to have their dispute resolved conclusively by an arbitrator. First, the court held that the arbitrator exceeded his authority in relying on cases construing the RLA rather than on an interpretation of the collective bargaining agreement. 776 F.Supp. at 1114–15. Second, the court suggested that the arbitrator's reading of these cases was wrong. 776 F.Supp. at 1115–16.

We shall address these two rationales in turn.

### A.

■ We first consider the district court's conclusion that the arbitrator lacked the authority to consider federal case law in arriving at his decision. The district court suggested that the arbitrator's analysis contravened Supreme Court precedent holding that "[i]f an arbitral decision is based 'solely upon the arbitrator's view of the requirements of enacted legislation,' rather than on an interpretation of the collective-bargaining agreement, the arbitrator has 'exceeded the scope of the [parties'] submission,' and the award will not be en-

1. The "arbitrator" was actually a three-person arbitration board consisting of a management member, a union member, and a neutral member. In the briefs the parties have used the shorthand of the "arbitrator" and have referred to "his" decision, and for the sake of convenience we continue that practice here.

forced." *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 53, 94 S.Ct. 1011, 1022, 39 L.Ed.2d 147 (1974) (quoting *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361). In the district court's view, the arbitrator's reliance upon federal case law interpreting the RLA so tainted his decision as to render it unenforceable.

We disagree. First, we note that the Supreme Court cases relied on by the district court do not announce any sort of blanket prohibition on an arbitrator's recourse to legal authority. Rather, the Court has recognized that the limits of an arbitrator's authority are defined by the terms of the parties' own submission. *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986); *Warrior & Gulf*, 363 U.S. at 582, 80 S.Ct. at 1352. We know of no statutory basis for any sort of rule that would require arbitrators to remain willfully ignorant of the governing statutes and case law. Contrary to the contention of RF & P, we find nothing in the RLA that expresses a policy preference for such an ill-informed pool of arbitrators.[2] If anything, the statute points in the direction of consulting relevant sources of statutory interpretation, for the RLA provides that an arbitration award may be set aside where the arbitrator fails "to comply with the requirements" of the statute, 45 U.S.C. § 153 First (q).

We thus conclude that it is up to the parties to define the issues submitted, and that there is no statutory barrier to submitting questions involving the interpretation of statutes or case law. *See High Con-*

crete Structures, Inc. v. United Electrical, Radio and Machine Workers of America, Local 166*, 879 F.2d 1215, 1218–19 (3d Cir. 1989) (terms of a submission "may empower an arbitrator to resolve disputes that go beyond the four corners of a collective bargaining agreement"); *Jones Dairy Farm v. Local No. P–1236, United Food and Commercial Workers Int'l Union*, 760 F.2d 173, 176 (7th Cir.1985) ("If people want a question of law resolved by an arbitrator rather than a judge, there is nothing to stop them.") If, as in *Enterprise Wheel*, the parties confine their submission narrowly to an interpretation of the collective bargaining agreement, 363 U.S. at 594, 80 S.Ct. at 1359, then the arbitrator's decision must "draw[ ] its essence from" the agreement. *Id.* at 597, 80 S.Ct. at 1361. If, on the other hand, the parties submit an issue without limiting the sources the arbitrator may consult, the arbitrator may base his decision on any of a number of grounds, including statutes and case law:

> Unless the parties specifically limit the powers of the arbitrator in deciding various aspects of the issue submitted to him, it is often presumed that they intend to make him the final judge on any questions which arise in the disposition of the issue, including not only questions of fact but also questions of contract interpretation, rules of interpretation, and questions, if any, with respect to substantive law.

Elkouri & Elkouri, *supra*, at 366. *See also Jones Dairy*, 760 F.2d at 175–76 (voluntary and unreserved submission authorizes arbitrator to determine parties' legal rights).

■ In this case, RF & P and TCU submitted to the arbitrator the broad issue of

---

2. RF & P would have us locate such a limitation in the terms of the parties' general agreement creating a standing arbitration board, which tracks the language of the RLA, 45 U.S.C. § 153 First (i). This agreement does not, however, purport to establish any sort of "jurisdictional" limits on the sources of authority the arbitrator may consult. It authorizes the parties to submit to arbitration disputes "growing out of ... [the] application of agreements concerning rates of pay, rules, or working conditions," but makes

no attempt to dictate the proper bases for resolving such disputes. Here the parties' dispute clearly "grew out of" the collective bargaining agreement, so the arbitrator had authority to resolve it. Neither the agreement nor the statute prevents the arbitrator from consulting the requirements of the RLA. The arbitrator was thus entitled to conclude, as he did, that in the absence of any affirmative contractual authority for the offers, RF & P was required by law to bargain with the union.

"whether the RF & P can unilaterally separate employees without an agreement with TCU." The parties in no way confined the arbitrator's authority to an examination of the collective bargaining agreement. In so doing, the parties made the arbitrator the "final judge" on all questions that might arise in the disposition of the dispute, including not only whether the collective bargaining agreement permitted the severance offer but also whether RF & P could legally make such an offer. The manifest purpose of the arbitration was to "avoid the unnecessary expense and possible delays that would result from litigation." For courts to read unexpressed restrictions into the arbitrator's authority—and thereby encourage litigation designed to overturn its exercise—is to deprive the parties of the benefit of the arbitral judgment for which they had bargained.

By submitting such a broad issue without any limitations as to permissible sources of authority, the parties likewise ceded to the arbitrator the duty of defining the precise "contours of the issue[ ] submitted." *Pack Concrete, Inc. v. Cunningham,* 866 F.2d 283, 286 (9th Cir.1989). The arbitrator's interpretation of the scope of the issue submitted is entitled to deference, *Federated Dept. Stores v. United Food & Commercial Workers Union, Local 1442,* 901 F.2d 1494, 1498 (9th Cir.1990), and must be upheld so long as it is rationally derived from the parties' submission. *High Concrete,* 879 F.2d at 1219; *Mobil Oil Corp. v. Independent Oil Workers Union,* 679 F.2d 299, 302 (3d Cir.1982). The issue of whether RF & P "can unilaterally separate employees" rationally encompassed not only whether RF & P had *contractual* power to make the severance offer, but also, as the arbitrator apparently found, whether RF & P had the *legal* authority to do so. In short, the question of the permissibility of the unilateral severance offer was submitted to the arbitrator to resolve. He did resolve it, and we decline RF & P's invitation to second-guess the arbitrator's reasonable formulation of the issue before him.

**3.** It is important to place the arbitrator's use of federal decisional law in perspective. This was

Finally, RF & P's contention that the parties understood the submission to be limited to an interpretation of the collective bargaining agreement is undermined by the railroad's own brief to the arbitrator. In that brief RF & P relied on the same kind of authority that it now criticizes the arbitrator for considering—the railroad rolled in its own battery of federal cases which assertedly established that "[i]ndividual contracts, particularly individual offers and acceptances of retirement or resignation, *are* lawful ... if they are not inconsistent with or have been authorized by the applicable collective bargaining agreement." *Transportation–Communication Employees Union v. Grand Trunk W. R.R. Co.,* 679 F.Supp. 696, 699 (E.D.Mich. 1988) (emphasis in original). *See also International Ass'n of Machinists v. Soo Line R.R. Co.,* 850 F.2d 368 (8th Cir.1988) (en banc). From the outset, then, RF & P proceeded on the assumption that the parties had empowered the arbitrator to consider the legality of its unilateral severance offer; any objections to the arbitrator's power were made late in the day, after the die appeared to be cast. The railroad will not now be heard to challenge the arbitrator's authority to resolve that issue:

> It would be odd if having consented to have the arbitrator decide what its legal rights ... were, [appellee] could then have the same question redetermined by two courts—the district court and this court.... Since [appellee], by submitting without a peep to the arbitrator's jurisdiction, admitted the competence of the arbitrator to determine its "legal rights," it cannot complain that the arbitrator exceeded his authority by determining them.

*Jones Dairy,* 760 F.2d at 176. *See also Johnson v. United Food & Commercial Workers, Local No. 23,* 828 F.2d 961, 965 (3d Cir.1987); *International Bhd. of Teamsters, Local No. 117 v. Washington Employers, Inc.,* 557 F.2d 1345, 1350 (9th Cir.1977).[3]

not a case in which the arbitrator overlooked the critical importance of the collective bargain-

### B.

■ We now turn to the district court's conclusion—and RF & P's contention—that the arbitrator's legal analysis was irretrievably flawed. The district court reviewed four cases cited by the arbitrator, *J.I. Case Co. v. NLRB*, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944); *Order of Ry. Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 64 S.Ct. 582, 88 L.Ed. 788 (1944); *Brotherhood of Ry., Airline, and Steamship Clerks v. Chesapeake & Ohio Ry. Co.*, 115 L.R.R.M. (BNA) 3635, 1983 WL 1754 (N.D.Ohio 1983); *Southern Pac. Transp. Co. v. Brotherhood of Ry., Airline, and Steamship Clerks*, 636 F.Supp. 57 (D.Utah 1986), and determined that the arbitrator was mistaken in relying on them. Thus, although the arbitrator correctly cited *J.I. Case* and *Order of Ry. Telegraphers* for the proposition that an employer may not circumvent the certified collective bargaining representative by entering into individual contracts that diminish the employer's contractual obligations, *see J.I. Case*, 321 U.S. at 339, 64 S.Ct. at 581; *Order of Ry. Telegraphers*, 321 U.S. at 347, 64 S.Ct. at 585, the district court found "unpersuasive" the assessment that the separation offer would have such an effect in this case. 776 F.Supp. at 1116 n. 9. And although the arbitrator accurately quoted from two district court opinions specifically finding a prohibition on unilateral severance offers under the RLA, *Southern Pac. Transp. Co.*, 636 F.Supp. at 59; *Chesapeake & Ohio Ry. Co.*, 115 L.R.R.M. at 3639, the district court suggested that those decisions were technically distinguishable since they involved a union's right to prevent the unilateral offers through an injunction under 45 U.S.C. § 156, while there was no injunction pending in this case. 776 F.Supp. at 1116.

We think the district court applied too stringent a standard in its review of the arbitrator's legal analysis. In arbitration cases, courts must break with their usual habit of scrupulously examining the underlying merits of the dispute. Ordinarily, the reviewing court's task is to enforce the bargained-for decision of the arbitrator and not to evaluate the arbitrator's factual findings or legal analysis. *See Enterprise Wheel*, 363 U.S. at 596, 80 S.Ct. at 1360 (courts should refuse to review the merits of an arbitration award). As this court has recently held, "[a]n arbitration award is enforceable 'even if the award resulted from a misinterpretation of law, faulty legal reasoning or erroneous legal conclusion.' " *Upshur Coals Corp. v. United Mine Workers of Amer., Dist. 31*, 933 F.2d 225, 229 (4th Cir.1991) (quoting *George Day Constr. Co. v. United Bhd. of Carpenters, Local 354*, 722 F.2d 1471, 1479 (9th Cir.1984)).

We thus examine the arbitrator's decision to determine only "whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it." *Brotherhood of Locomotive Engineers v. Atchison, Topeka and Santa Fe Ry. Co.*, 768 F.2d 914, 921 (7th Cir.1985). So long as an arbitrator makes a good faith effort to apply the law as he perceives it, the courts may not upset his decision simply because they are able to poke a few holes in the arbitrator's analysis. Reversal is appropriate only where the arbitrator " 'understand[s] and correctly state[s] the law, but proceed[s] to disregard the same,' " *Upshur Coals*, 933 F.2d at 229 (quoting *San Martine Compania de Navegacion, S.A. v. Saguenay Terminals Ltd.*,

---

ing agreement or the common law of the industry as reflected in past arbitral decisions. Rather, the arbitrator noted that "in a circumstance where the parties are in dispute, the Agreements are silent, and there is no persuasive past practice we feel it is proper to at least recognize the persuasive directives of various federal courts in the area." We think this is a permissible means of proceeding to address a dispute which the parties wished to have resolved in its entirety by arbitration.

293 F.2d 796, 801 (9th Cir.1961)), so that his decision "reflects his personal notions of right and wrong." *Id.* at 231.

Under this standard, the arbitrator's decision in this case passes muster. No one has suggested that the arbitrator's decision was grounded in his own "personal notions of right and wrong," or in anything other than a good faith assessment of what the law required. The arbitrator accurately cited the Supreme Court's directive that individual agreements not be used "as a waiver of any benefit to which the employee otherwise would be entitled under the trade agreement," *J.I. Case,* 321 U.S. at 338, 64 S.Ct. at 580, and the district court was not entitled to dismiss as "unpersuasive" the arbitrator's conclusion that the railroad's unilateral offer would have that effect here. *See Anaconda Co. v. Dist. Lodge No. 27 of the Int'l Ass'n of Machinists,* 693 F.2d 35, 37–38 (6th Cir.1982) (mere error in application of Supreme Court precedent to facts of the case not sufficient to justify reversal of arbitrator). Nor can we sanction the district court's attempts to distinguish those cases finding unilateral severance offers to violate the RLA. *See Southern Pac. Transp. Co.,* 636 F.Supp. at 59; *Chesapeake & Ohio Ry. Co.* 115 L.R.R.M. at 3639. The arbitrator "applied what he thought was the law," *Jones Dairy,* 760 F.2d at 176, and we are thus obliged to enforce his decision.

RF & P argues that the arbitrator's decision should nevertheless be set aside because its analysis was in manifest disregard of more recent Supreme Court authority. The railroad directs our attention to the Court's decision in *Pittsburgh & Lake Erie R.R. Co. v. Railway Labor Executives' Ass'n,* 491 U.S. 490, 109 S.Ct. 2584, 105 L.Ed.2d 415 (1989), and suggests that it undermines the opinions relied on by the arbitrator. Thus, the railroad essentially argues that the arbitrator's decision was properly overturned by the district court because it "contradicts an explicit mandate of the Supreme Court," *George Day,* 722 F.2d at 1477.

We cannot agree. *Pittsburgh & Lake Erie* includes no "explicit mandate"—it does not even purport to consider the legality of unilateral severance offers. It merely holds that a union may not interfere with a railroad's decision to sell its assets and cease its operations where the collective bargaining agreement is silent as to such a sale. 491 U.S. at 509, 109 S.Ct. at 2595. The *Pittsburgh & Lake Erie* decision is thus of marginal relevance to the legality of a unilateral separation offer.

Indeed, at least one circuit, in a decision subsequent to *Pittsburgh & Lake Erie,* has found that a unilateral severance offer may be inconsistent with the "principles stated in *J.I. Case.*" *See Brotherhood of Ry. Carmen v. Atchison, Topeka & Santa Fe Ry.,* 894 F.2d 1463, 1466 (5th Cir.1990). To be sure, the courts have failed to reach a consensus on this issue. Another circuit has upheld a unilateral separation offer as being consistent with the RLA. *See International Ass'n of Machinists,* 850 F.2d at 375. RF & P would have us adopt the Eighth Circuit's analysis in *International Ass'n of Machinists* and repudiate those opinions on the other side of the dispute. We decline to enter the fray, and conclude that the arbitrator was entitled to rely on what he thought was the law. It simply is not our place to determine which side of the conflict the arbitrator should have come down on.

### III.

RF & P and the union agreed to submit this dispute to expedited arbitration, hoping to avoid the sort of delay that is now besetting them. RF & P vigorously argued before the arbitrator that its unilateral severance offer should be sustained. When that attempt failed, the railroad brought this litigation, seeking a second bite at the apple. To permit such attempts would transform a binding process into a purely advisory one, and ultimately impair the value of arbitration for labor and management alike. Nothing would be more destructive to arbitration than the perception that its finality depended upon

the particular perspectives of the judges who review the award.

We reverse the judgment of the district court and remand this case with directions to reinstate the arbitration award.

REVERSED.