993 F.2d 1536
 125 Lab.Cas. P 10,687
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 EASTERN ASSOCIATED COAL CORPORATION, a corporation,
Plaintiff-Appellee,
v.
LOCAL 1503, UNITED MINE WORKERS OF AMERICA; District 17,
United Mine Workers of America, unincorporated
labor associations, Defendants-Appellants.
 
 No. 92-1943.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 2, 1993
May 17, 1993
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Charles H. Haden, II, Chief District Judge. (CA-91-1243-2)
 Argued: Charles F. Donnelly, District 17, United Mine Workers of America, Charleston, West Virginia, for Appellants.
 Charles David Morrison, Clarksburg, West Virginia, for Appellee.
 On Brief: Robert H. Stropp, Jr., General Counsel, International Union, United Mine Workers of America, Washington, D.C., for Appellants.
 Carolyn A. Wade, Clarksburg, West Virginia, for Appellee.
 S.D.W.Va.
 REVERSED AND REMANDED.
 OPINION
 Before WILKINSON and WILLIAMS, Circuit Judges, and MACKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 District 17 and Local Union 1503 of the United Mine Workers of America (Union) challenge the district court's summary judgment order vacating a final and binding arbitration award. The district court vacated the arbitration award to allow testimony from a witness who had refused to testify at the earlier hearing. Finding that the arbitrator's award neither violated public policy nor resulted from a defective grievance proceeding, we reverse the district court's order and remand with instructions to enforce the award.
 
 I.
 
 2
 On October 24, 1991, Eastern Associated Coal Corporation (Eastern) issued Union member Steven Clay a notice of suspension with intent to discharge. The notice alleged that Clay had illegally tampered with a coal dust pump.[1] Clay filed a grievance with the Union stating that he did not tamper with the pump and the Union submitted the grievance to arbitration under article XXIV(d) of the collective bargaining agreement (Agreement) between the Union and Eastern.[2]
 
 
 3
 At the arbitration hearing, Clay presented four witnesses who testified that he did not tamper with the pump. Eastern intended to call two eyewitnesses to prove that he did. One of the witnesses, Jerry Maggard, had received a target letter from the U.S. Attorney's Office informing him that a federal grand jury was investigating his possible involvement in tampering with coal dust samples at Eastern. Before Maggard testified, the arbitrator advised him that although Maggard would not be able to seek advice from his attorney during his testimony, he could take whatever time he needed prior to testifying to consult with his attorney regarding his Fifth Amendment right against self-incrimination.[3] Upon the advice of his counsel, Maggard declined to testify.
 
 
 4
 After hearing the evidence, the arbitrator found that Eastern failed to show just cause for discharging Clay and ordered that he be reinstated with full seniority and back pay. In a written opinion, the arbitrator stated that Eastern's case "may have suffered significantly" because of Maggard's decision not to testify. (J.A. at 91.) The arbitrator also stated, however, that his decision was not based on weighing the number of witnesses, but on applying objective standards for determining witness credibility. Specifically, the arbitrator found that although dust pump tampering is "a severe breach ... which deserves discharge," J.A. 13, Eastern presented no evidence that the dust pump results were unsatisfactory and therefore he was not convinced by clear and convincing evidence of Clay's guilt.
 
 
 5
 Shortly after the arbitrator rendered his decision, the U.S. Attorney's Office notified Maggard that he was no longer a subject of the grand jury's investigation. In an effort to obtain a new arbitration hearing so that Eastern could present Maggard's testimony, Eastern filed this suit asking the district court to vacate the arbitrator's award. On cross-motions for summary judgment, the district court vacated the arbitrator's award and ordered a new arbitration hearing in order to allow Maggard to testify. This appeal followed.
 
 II.
 
 6
 Summary judgment is only appropriate where there are no genuine issues of material fact such that a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We review a district court's grant of summary judgment de novo. Higgins v. E.I. Du Pont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988). In this case, the parties do not contend that there are any disputed facts. Therefore, our review is limited to a determination of whether the district court correctly applied the law. Yazzie v. Olney, Levy, Kaplan & Tenner, 593 F.2d 100, 102 (9th Cir. 1979).
 
 
 7
 Federal law recognizes the strong public policy of encouraging the settlement of labor disputes through arbitration. See, e.g., United Steelworkers v. Enterprise Wheel and Car Corp., 363 U.S. 593, 596 (1960); Richmond, F. & P. R.R. v. Transportation Communications Int'l Union (RF & P ), 973 F.2d 276, 278 (4th Cir. 1992) In order to promote this policy, courts reviewing a final and binding arbitration are limited to a very narrow scope of review. RF & P, 973 F.2d at 278. Indeed, "[e]very presumption is in favor of the validity of the award." Id. (citing Burchell v. Marsh, 58 U.S. (17 How.) 344, 351 (1855)). Although a court normally must uphold an arbitrator's award "so long as it is rationally derived from the parties' submission," RF & P, 973 F.2d at 280, in certain narrow circumstances a district court may vacate an arbitration award if it violates public policy or resulted from a defective grievance proceeding, United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 40-41, 43 (1987).
 
 
 8
 In this case, the district court vacated the award because it "resulted in a significant compromise of substantial public policies resulting in a defective grievance procedure." (J.A. at 12-13.) We address in turn whether the award resulted from a defective grievance procedure and whether it violated any public policies.
 
 A.
 
 9
 The district court found that the arbitrator committed procedural error which resulted in a defective grievance proceeding. Procedural questions are generally left to the arbitrator. United Paperworkers, 484 U.S. at 40. Moreover, the arbitrator is not confined to following formal rules of procedure. Robbins v. Day, 954 F.2d 679, 685 (11th Cir.), cert. denied, 113 S. Ct. 201 (1992); National Post Office Mailhandlers, Watchmen, Messengers & Group Leaders Div. v. United States Postal Servs., 751 F.2d 834, 841 (6th Cir. 1985). Therefore, an arbitration award can only be vacated because of a procedural defect if the arbitrator's ruling was made in bad faith, United Paperworkers, 484 U.S at 40; was the result of misconduct on the part of the arbitrator, Robbins, 954 F.2d at 683; or deprived one of the parties of a full and fair hearing, Hoteles Condado Beach, La Concha & Convention Center v. Union de Tronquistas Local 901, 763 F.2d 34, 40 (1st Cir. 1985). The right to a full and fair hearing, however, does not require the arbitrator to hear every piece of evidence or every witness a party wishes to present. Hoteles Condado Beach, 763 F.2d at 39.
 
 
 10
 The district court did not find that the arbitrator premised his ruling on bad faith or misconduct. Instead, the court found that, in refusing to allow Maggard to seek legal advice during his testimony, the arbitrator caused Maggard not to testify, which in turn deprived Eastern of a full and fair hearing on its claims.
 
 
 11
 It is significant that the arbitrator did not refuse to allow Maggard to testify; he simply refused to allow his attorney to be present during the testimony. Maggard himself made the decision not to testify after consulting with his attorney. We do not doubt that the arbitrator's refusal to allow Maggard's attorney to be present during his testimony was a major factor in his decision not to testify; the arbitrator, however, was under no obligation to allow Maggard's attorney to be present. In fact, article XXIII, section (i) of the Agreement provided that neither party to an arbitration hearing could be represented by an attorney during the proceedings. This section of the Agreement reflects the parties' preference that the arbitration proceeding be informal and proceed without complications that attorneys may inject into the hearing. The arbitrator reasonably could have concluded that this section authorized him to exclude all attorneys from the hearing. See Upshur Coals Corp. v. United Mine Workers, Dist. 31, 933 F.2d 225, 228-29 (4th Cir. 1991) (arbitration award may not be vacated merely because court disagrees with arbitrator's interpretation of collective bargaining agreement).
 
 
 12
 Moreover, Eastern made no attempt at the hearing to develop an alternative solution to the arbitrator's ruling, other than suggesting that the Union's cross-examination of Maggard be severely limited:[4] Eastern simply allowed the arbitrator to proceed without objection.5 It was only after Clay's grievance was granted that the company objected to the procedure. Thus, even were we to find that the arbitrator committed some procedural error, Eastern's decision to continue with the arbitration hearing without objection waived the alleged procedural defect. RF & P, 973 F.2d at 280.
 
 B.
 
 13
 The district court also concluded that the arbitrator's award offended three public policies: the Fifth Amendment right against self-incrimination, the Sixth Amendment right to counsel, and the Mine Workers Safety Act policy of promoting mine safety. In order to vacate an arbitrator's award for violation of public policy, the "public policy ... must be well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.' " W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum, & Plastic Workers, 461 U.S. 757, 766 (1983) (quoting Muschany v. United States, 324 U.S. 49, 66 (1945)). We hold that none of the asserted public policies were violated by the arbitrator's award.
 
 
 14
 There is no violation of the Fifth Amendment right against self-incrimination as long as the person seeking to claim the Amendment's protection is "guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will.' " United States v. Albright, 388 F.2d 719, 724 n. 7 (4th Cir. 1968) (quoting Malloy v. Hogan, 378 U.S. 1, 8 (1964)). Furthermore, the Fifth Amendment only protects against the government "compelling an individual to be a witness against himself." United States v. Frazier, 971 F.2d 1076, 1080 (4th Cir. 1992), cert. denied, 113 S. Ct. 1028 (1993).
 
 
 15
 Maggard was is no way compelled by the government to be a witness against himself because the arbitration proceeding did not involve any governmental action. See Anderson v. National R.R. Passenger Corp. (AMTRAK), 754 F.2d 202, 204 (7th Cir. 1984) (nexus with government required before Fifth Amendment applies). Even if the arbitration proceeding had involved governmental action, the arbitrator satisfied any Fifth Amendment concerns by allowing Maggard to remain silent and excusing him from the proceeding. While the arbitrator's conduct of the hearing may have forced Maggard to make a difficult decision regarding whether or not to testify, the Fifth Amendment is not intended to eliminate every difficult decision that might confront a witness in a civil case. Frazier, 971 F.2d at 1080. Therefore, the arbitration award did not offend the public policy embodied in the Fifth Amendment.
 
 
 16
 Similarly, the arbitrator's award did not infringe on any Sixth Amendment right to counsel. An individual does not have a Sixth Amendment right to counsel until an adversarial criminal judicial proceeding has been initiated against him. Kirby v. Illinois, 406 U.S. 682, 688 (1972). Once a criminal proceeding has begun, the individual has a constitutional right to counsel at every critical stage of the criminal proceeding. United States v. Henry, 447 U.S. 264, 269, 100 S. Ct. 2183, 2186 (1980). In this civil arbitration matter, where Maggard was given the opportunity to consult with his attorney prior to the hearing, and only precluded from having his attorney present in the hearing where no other attorney was allowed, no Sixth Amendment right to counsel concern is offended.
 
 
 17
 We also find that the award did not infringe upon the public policy of enhancing miner safety, as expressed in 30 U.S.C.ss 801(a) and (e) (1988). The arbitrator found that Eastern failed to establish good cause for Clay's dismissal. The arbitrator also found that no objective evidence established that anyone had tampered with the coal dust pump or that it was giving inaccurate readings. These findings fail to demonstrate that enforcement of the arbitrator's award will impair mine safety. See United Paperworkers, 484 U.S. at 43 (a court can only set aside an award on public policy grounds if it is clearly shown that a violation of public policy will occur if the award is enforced).
 
 
 18
 We are reminded, however, of the strong public policy of encouraging the settlement of labor disputes through arbitration. RF & P, 973 F.2d at 278. This policy "promote[s] industrial stabilization through the collective bargaining agreement." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578 (1960). Arbitration serves to provide the parties with a swift resolution of their disputes, Upshur, 933 F.2d at 231, which can only be accomplished if the courts grant finality to arbitration awards, RF & P, 973 F.2d at 278. As this court has previously noted, allowing parties to have a"second bite at the [arbitration] apple" has the effect of"transform[ing] a binding process into a purely advisory one, and ultimately impair[s] the value of arbitration for labor and management alike. Nothing would be more destructive to arbitration than the perception that its finality depended upon the particular perspectives of the judges who review the award." RF & P, 973 F.2d at 282-83.
 
 III.
 
 19
 For the reasons stated above, the district court's order vacating the arbitration award is reversed and this case is remanded with instructions to enforce the decision to reinstate Clay with full seniority and back pay.
 
 REVERSED AND REMANDED
 
 
 [1]
 The Secretary of Labor promulgated regulations establishing maximum levels of respirable dust allowed in the working portions of the mine. 30 C.F.R. §§ 70.100-01 (1991). To ensure that mines comply with these regulations, mine operators are required to determine the amount of respirable dust in the mine by pumping the air through filters in a dust pump and then submitting the filters to the Mine Safety and Health Administration for analysis. See 30 C.F.R.s 70.207 (1991). An individual controlling the dust pump who willfully fails to take an accurate sample is subject to criminal sanctions. 30 U.S.C.ss 820(c) & (f) (1988). Eastern intended to dismiss Clay because, in its view, Clay's actions constituted a willful violation under 30 U.S.C. § 820
 
 
 [2]
 The Union and Eastern are both signatories of the National Bituminous Coal Wage Agreement of 1988 (Agreement), which is the collective bargaining agreement applicable in this case. Under the terms of the Agreement, Eastern can only discharge a covered employee for just cause, and the Union is entitled to proceed immediately to arbitration if it believes just cause does not exist for the employee's discharge. The Agreement provides that except by mutual consent, licensed attorneys for the parties are excluded from the hearing. The Agreement further provides that an arbitrator's award is final and states that the intent of the Agreement is for the grievance procedure and collective bargaining to be the sole mechanisms for settling disputes "without recourse to the courts." (J.A. at 62.)
 
 
 [3]
 Eastern did not notify the Union or the arbitrator prior to the hearing that Maggard had received a target letter or that his testimony might cause some procedural difficulties due to his desire to avoid incriminating himself
 
 
 [4]
 Eastern suggested that Maggard testify as to Clay's alleged activities on direct but that the Union be prevented during cross-examination from inquiring about the target letter or about his alleged involvement in the tampering problem. The arbitrator refused this suggestion on the grounds that it interfered with the Union's right to cross-examine the witness. The arbitrator's decision in this regard was not an abuse of discretion. See Morley v. Cohen, 888 F.2d 1006, 1011-12 (4th Cir. 1989) (upholding district court's denial of a motion in limine which would have allowed a defendant to take the stand in his own defense but then prevented any cross-examination on subject matters that might incriminate him)
 
 
 [5]
 Specifically, counsel for Eastern conceded that the company did not ask for a continuance of the hearing, did not seek immunity for the testimony, and did not make a proffer of Maggard's testimony