**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 05-1993**

———————

In Re: DORRIS MARKETING GROUP, formerly doing
business as Dorris & Associates,

                                                        Debtor.

_____


EDWARD K. DORRIS; NANCY DORRIS,

                                        Plaintiffs - Appellants,

        and

GORDON P. PEYTON,

                                                        Trustee,

        versus

AMERICAN  COLLEGE  OF  DENTISTS  FOUNDATION,
INCORPORATED,

                                        Defendant - Appellee.

———————

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  Leonie M. Brinkema, District
Judge.  (CA-05-572-LMB; BK-03-15025-SSM)

———————

Submitted:  May 22, 2006          Decided:  June 15, 2006

———————

Before WILKINS, Chief Judge, and WILKINSON and NIEMEYER, Circuit
Judges.

---

Affirmed by unpublished per curiam opinion.

---

Bruce H. Matson, LECLAIR RYAN, P.C., Richmond, Virginia; C. Erik Gustafson, Tara L. Elgie, LECLAIR RYAN, P.C., Alexandria, Virginia, for Appellants. Victor M. Glasberg, Paul Gowder, VICTOR M. GLASBERG & ASSOCIATES, Alexandria, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Edward and Nancy Dorris and Dorris Marketing Group, Inc. (collectively, "DMG") appeal an order of the district court affirming an order of the bankruptcy court. The bankruptcy court order, in turn, confirmed an arbitration award in favor of Appellee American College of Dentists Foundation, Inc. (ACDF). We affirm.

I.

ACDF is responsible for fundraising for the American College of Dentists. In 1999, ACDF decided to engage a professional fundraiser for an extensive campaign. In October 2000, ACDF entered into a contract with DMG for fundraising services. Pursuant to the contract, DMG agreed to "conscientiously ... devote its best efforts and abilities" to a fundraising campaign on behalf of ACDF. J.A. 61. Among other things, DMG promised to conduct face-to-face meetings with potential donors. This technique was a primary reason for ACDF's decision to hire DMG.

Although the contract did not set a specific fundraising goal, it prohibited ACDF from terminating the agreement if DMG had received commitments of at least $2.5 million by December 30, 2001 and provided for a $65,000 bonus if DMG obtained commitments of $5 million or more by the end of the campaign on March 31, 2002. These amounts were based on the results of a pre-campaign study conducted by DMG; the study indicated that a fundraising campaign

3

of the type DMG proposed could raise $2.6 million.  The contract also contained a clause requiring arbitration of "[a]ny and all disputes, controversies or claims between parties hereto arising under, out of, or in any way relating to this Agreement."  Id. at 63.

DMG breached the agreement in numerous respects.  For example, DMG failed to implement a campaign structure, and the first manager of the campaign had no fundraising experience.  Additionally, although ACDF provided a list of potential donors and identified 65 of these as priority candidates, DMG failed to contact many of those on the list.  Those who were contacted were solicited by telephone rather than by in-person visit.  And, DMG simply stopped work on the campaign in early 2002 without any justification.  The total amount raised during the campaign was $232,000; ACDF paid DMG $237,205.

In calculating the award to ACDF, the arbitrator began with the $2.6 million figure that DMG had conceded was a reasonable goal for the campaign.  The arbitrator then halved this amount to account for the economic upheavals caused by the terrorist attacks of September 11, 2001.  After subtracting the amount actually raised during the campaign and adding the amount still owed to DMG under the contract, the arbitrator awarded ACDF $1,033,401.57.  DMG now challenges this award.

4

II.

"Judicial review of an arbitration award is among the narrowest known to the law." Richmond, Fredericksburg & Potomac R.R. v. Transp. Commc'n Int'l Union, 973 F.2d 276, 278 (4th Cir. 1992) (internal quotation marks omitted). The question in reviewing an arbitration award is whether the award "draw[s] its essence from the contract." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). Indeed, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Id.

DMG's chief complaint is that the arbitrator's award does not draw its essence from the contract because the $2.6 million figure with which the arbitrator began is not found in the contract. We agree with the district court, and with the bankruptcy court before it, that the award clearly drew its essence from the contract. It is clear that in executing the contract, the parties had in mind a fundraising goal consistent with the $2.6 million that the pre-campaign study indicated was possible. It was therefore entirely reasonable for the arbitrator to base the award on this figure even though it was not specifically mentioned in the contract. We therefore affirm.

AFFIRMED

5