**HIGH CONCRETE STRUCTURES, INC. of N.J., Plaintiff–Appellee,**

v.

**UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICA, LOCAL 166, Defendant–Appellants.**

No. 88–1823.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) May 15, 1989.

Decided July 25, 1989.

Robin Alexander, General Counsel, United Electrical, Radio and Machine Workers of America, Pittsburgh, Pa., for defendant-appellants.

Arthur M. Brewer, Shawe & Rosenthal, Baltimore, Md., Donald K. Joseph, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, Pa., for plaintiff-appellee.

Before GIBBONS, Chief Judge, MANSMANN and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Chief Judge:

United Electrical, Radio and Machine Workers of America, Local 166 (the union) appeals from a summary judgment in favor of High Concrete Structures, Inc. (the employer) in the employer's suit to vacate the award of an arbitrator. The arbitrator's award resolved in the union's favor a grievance filed on behalf of Pietro Carini with respect to the number of years of credited service to be used in calculating his disability pension. We conclude that the award was within the terms of the parties' submission, and should be enforced. Thus, we will reverse the summary judgment in favor of the employer.

### I

The statement of grievance giving rise to the arbitration reads:

> [the] Company has violated Section 26 and the Agreement between U.E. Local 166 and High Concrete Structures of N.J. in that it failed to raise the credited service CAP for Disability Pension to 30 years as agreed upon during contract negotiations.

The remedy requested by the Union was that "this situation be corrected immediately with all back monies due for employees affected by Company's actions." When the grievance was denied by the employer, the union requested arbitration. The employer and the union then stipulated that the arbitrator was to resolve the following issue:

> Should the CAP on disability retirement credited years of service be 25 or 30 years?

After a hearing, the arbitrator sustained the union's grievance, ruling:

> The Company shall apply a 30 year CAP to disability retirement and credit employees accordingly for the term of the agreement. Employees who retired on disability who have been affected by the failure of the Company to apply the 30 year CAP in the computation of their pension benefits shall be paid any money due.

The employer then sued to vacate the arbitration award, contending that the arbitrator had exceeded his authority by rewriting the collective bargaining agreement.

### II

The employer and the union have been parties to a series of collective bargaining

agreements which have dealt, among other subjects, with normal and disability pensions by means of a defined benefit plan. The benefits are defined in part by credited years of service, with a maximum number of years of credited service, referred to as a CAP. The collective bargaining agreement covering the years 1980 to 1983 provided that the CAP for normal retirement would be 25 years, and that disabled employees having five years or more of actual service would be eligible for a disability pension and would receive credit for 25 years of service in calculating a disability pension. Several changes were made in the disability pension formula in the collective bargaining agreement for the years 1983 to 1986, including the raising of the required years of actual service from five to ten years.

In August of 1986, the employer and the union concluded negotiations on a collective bargaining agreement for the period September 1, 1986 to August 31, 1989. They signed a memorandum of the agreed-upon terms, and it contains the following relevant clause:

> First year to pension—the Company will increase the pension multiplier from 11.-75 to 12.25 per month, per year of service. *The CAP will be increased to 30 years.* (emphasis supplied).

The employer prepared a typewritten text of a new collective bargaining agreement purporting to reflect the terms agreed upon in the negotiations. When it was sent to the union a signed copy was returned to the company, together with a letter reading:

> The Union has completed its review of the newly negotiated agreement and finds only one discrepancy. That discrepancy is the Company's refusal to raise the cap on disability pension to thirty (30) years. This is precisely the issue in dispute concerning Grienance [sic] # 312.
>
> Enclosed find one (1) copy of a fully executed agreement which in no way shall be construed that the Union agrees with the Company's deletion 26 of the

agreement. Accordingly, this matter can only be resolved through arbitration.

Grievance # 312 is that filed on behalf of Pietro Carini.

The typed version of Section 26 reads: *Section 26.* The Company will amend its existing Union Pension Plan to $12.25 per month times the number of years of service upon retirement at age 65 with 10 years continuous and credited service; effective September 1, 1987, said monthly payment shall be increased to $12.75 per month and effective September 1, 1988 to $13 per month times the number of years of service. *The maximum continuous of credited service shall be thirty (30) years.* In the event an employee is permanently and totally disabled, he shall receive either Workman's Compensation or the Pension payment provided for in this Agreement, which ever is greater. For the purpose of the plan, a Participant is permanently and totally disabled when declared eligible to receive disability benefits from the Social Security Administration after having been certified to be totally and permanently disabled by the Social Security Administration. A disability pension shall be available only to employees who are vested under the Plan. An employee's disability benefit shall be based on his credited service in accordance with the following schedule:

| Completed Years of Seniority | Credited Service For Disability Pension |
|---|---|
| 10 | 13 |
| 11 | 15 |
| 12 | 18 |
| 13 | 20 |
| 14 | 22 |
| 15 or more | 25 |

All employees presently receiving monthly pensions shall be entitled to the maximum pension set forth in this contract, when the same becomes effective. There shall be no compulsory retirement, but pension benefits shall be provided in accordance with and subject to the terms of the existing Pension Plan.

(emphasis supplied). The employer and the union agree that the italicized language

accurately reflects their agreement with respect to the CAP on normal retirement service credit. The union contends, however, that Section 26 does not reflect the parties' agreement that the CAP be raised to 30 years both for normal and for disability pensions. Testimony before the arbitrator suggests that neither side at the negotiating table was explicit in differentiating the two different types of pension when the CAP was discussed.

Section 19 of the collective bargaining agreement provides in relevant part:

> *Section 19(a).* All differences, disputes and grievances that may arise under or in connection with the terms of provisions of this contract, or in connection with or relating to the application or interpretation of any of the terms of provisions thereof shall be settled [by grievance and arbitration procedures]. ... (4) ... the arbitrator shall in each instance be bound by the provisions of this Agreement and shall not have the authority in any way to change, modify or add to the provisions of this agreement.

> \* \* \* \* \* \*

> (c) Any question which may arise between the Union and the Company, or any employees and the Company may finally be disposed of by agreement between the Union and the Company. The Union and the Company may, at any time, by mutual agreement in writing, amend, alter, delete or add to the provisions of this contract.

Section 27 of the collective bargaining agreement sets forth an integration clause, stating that the agreement with any amendments thereof shall constitute settlement in full of all bargainable issues between the parties.

Accepting the employer's agreement, the district court ruled that under the terms of the collective bargaining agreement the arbitrator was limited to interpreting the agreement. Because, as the arbitrator acknowledged, Section 26 was unambiguous with respect to the CAP applicable to disability pensions, the award, according to the court, exceeded his authority by rewriting that paragraph.

### III

The National Labor Relations Act, as amended by the Taft–Hartley Act, adopts a national policy favoring resolution of labor-management disputes by arbitration. An agreement to arbitrate disputes that may arise in the future is valid and enforceable. *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Federal courts therefore do not ordinarily review the merits of an arbitration award where the parties have agreed to be bound by an arbitrator's decision. *E.g., United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960).

■ There are limits to such judicial deference. Courts may vacate awards tainted by fraud or bias, or, as is claimed by the employer here, awards dealing with matters outside the arbitrator's authority. 9 U.S.C. § 10. When an arbitrator's authority rests solely upon the text of the collective bargaining agreement, the award "must draw its essence" from the collective bargaining agreement. *Enterprise Wheel & Car Corp.,* 363 U.S. at 597–98, 80 S.Ct. at 1361; *Mobil Oil Corp. v. Independent Oil Workers Union,* 679 F.2d 299, 302 (3d Cir.1982). When the collective bargaining agreement is the sole source of the arbitrator's authority, and it limits awards to an interpretation thereof, the arbitrator must give effect to the plain meaning of the contract language. *Jersey Nurses Economic Security Organization v. Roxbury Medical Group,* 868 F.2d 88 (3d Cir.1989) (absent agreement providing for interest arbitration, arbitrator may not vary contract terms).

■ The parties may, however, agree to allow an arbitrator to go beyond the express terms of the collective bargaining agreement. They may do so either by providing in the collective bargaining agreement for interest arbitration as well as rights arbitration, or by agreeing, separately, to submit specific issues to arbitration.

Such a submission may be express, *Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 63 (3d Cir.1986), may incorporate an antecedent grievance, *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local No. 1*, 611 F.2d 580, 582–84 (5th Cir.1980), or may be based on other relevant submissions or actions, *Teamsters Local Union No. 764 v. J.H. Merritt & Co.*, 770 F.2d 40, 42 (3d Cir.1985). But however derived, the terms of the submission may empower an arbitrator to resolve disputes that go beyond the four corners of a collective bargaining agreement. *Roberts & Schaefer Co. v. Local 1846, UMW*, 812 F.2d 883 (3d Cir.1987); *Sun Ship*, 785 F.2d at 63.

■ The employer relies and the district court relied on the provision in Section 19(a)(4) of the collective bargaining agreement prohibiting the arbitrator from modifying its terms, and on the integration clause in Section 27. Neither clause, however, prohibits the parties from agreeing to a submission which is broader. Indeed Section 19(c) expressly provides for the disposition of any questions which may arise between the parties by agreement. An agreement to arbitrate is itself merely a contract. *Mobil Oil*, 679 F.2d at 302. Thus, in determining the arbitrator's authority, the court must look not only at the text of the collective bargaining agreement but also at the agreed submission. Moreover, "the deference that is accorded to an arbitrator's interpretation of the collective bargaining agreement should also be accorded to an arbitrator's interpretation of the issue submitted." *Mobil Oil*, 679 F.2d at 302. That interpretation will be upheld "if the arbitrator's interpretation ... can in any rational way be derived from the agreement." *Id.* (quoting *Ludwig Honold Manufacturing Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir.1969)).

With this deferential scope of review in mind, and exercising plenary review, we are compelled to conclude that the arbitration award must be enforced. The written submission asks for a resolution of whether the "CAP on disability retirement credit-ed years of service be 25 or 30 years." The underlying grievance, which apparently was filed before the union returned the signed collective bargaining agreement with a reservation of rights letter, states that the employer "failed to raise the credited service CAP for disability pension to 30 years agreed upon during contract negotiations." On the merits, the arbitrator's decision, in light of the submission, is rationally derived therefrom. The arbitrator was empowered to look at the August 29, 1986 memorandum as well as the later typewritten version of the contract. The former states without qualification that "the CAP will be increased to 30 years." In deciding the grievance in favor of the union, the arbitrator resolved any ambiguity. Whether that was done as a matter of intention of the parties or as a matter of resolving an issue left unresolved during the bargaining process matters not. The submission was broad enough for the arbitrator to do either.

Moreover, there is no record evidence that the employer in proceedings before the arbitrator challenged his authority to resolve the submitted grievance. That failure to object is entirely consistent with the terms of the submission. It is, moreover, an independent bar to consideration of such an objection at this stage. *Teamsters Local No. 764 v. J.H. Merritt & Co.*, 770 F.2d 40, 42–43 (3d Cir.1985).

## IV

The arbitrator's award was within the terms of the submission and rationally related thereto. The summary judgment in favor of the employer will therefore be reversed. Appellant's motion to correct the record or in the alternative for the court to take judicial notice of subsequent events will be denied as moot.