

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-25-2008

# Veeder Root Co v. Local 6521 United

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3781

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Veeder Root Co v. Local 6521 United" (2008). *2008 Decisions.* Paper 488.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/488

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-3781

.

VEEDER ROOT COMPANY,
a Subsidiary of Danaher Corporation

vs.

LOCAL 6521 UNITED STEEL, PAPER AND FORESTRY,
RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL
AND SERVICE WORKERS INTERNATIONAL UNION,
<u>Appellant</u>

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 05-cv-00409J)
District Judge: The Honorable Kim R. Gibson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 12, 2008
Before: McKEE, SMITH, and WEIS, <u>Circuit</u> <u>Judges</u>.

(Filed: September 25, 2008)
_____

<u>OPINION</u>

WEIS, <u>Circuit Judge</u>.

Local 6521 United Steel, Paper and Forestry, Rubber, Manufacturing,

Energy, Allied Industrial and Service Workers International ("Union") appeals an order of the District Court vacating an arbitration award. We will reverse.

Plaintiff/appellee Veeder-Root Company ("Veeder-Root") is a private company with a plant located in Altoona, Pennsylvania, where it manufactures products including magnetostrictive probes used in underground storage tanks. The probes are produced by bargaining unit employees represented by the Union under the terms of a collective bargaining agreement.

The CBA grants Veeder-Root the right to "establish production quality standards for employee performance, including allowances, under any accepted method or procedure in industrial engineering practices, and to make, at any time, motion, time or methods studies required for the efficient operation of its business." Moreover, the company may establish "new or revised standards" to adapt to various changed circumstances. New or revised standards "shall be subject to the grievance and arbitration procedures of this Agreement . . .."

The CBA also provides:

"Direct labor production standards shall be arbitrated by the submission of the disputed standard by the parties to an impartial arbitrator qualified in industrial engineering practices. Such arbitrator shall, without formal hearing, establish a fair and equitable standard based upon the provisions of the Agreement, relevant and material standards data made available to him, and his observation of the job,

2

and the parties shall be bound by his decision."

In 1998, Veeder-Root established a rate of 3.5 pieces per hour for assembling the magnetostrictive probes. Based upon the results of time studies, the company increased the production rate in April 2004 to 5.0 pieces per hour.

After the union protested the new rate, the dispute went to arbitration. The parties stipulated that the issue to be determined by the arbitrator was "whether or not the standard established and set by the Company is fair and reasonable or whether it is not reasonable in accordance with the provisions of the Labor Agreement."

The arbitrator sustained the union's grievances, finding that the 5.0 pieces per hour standard is not fair and reasonable and is not reasonable in accordance with the CBA. The arbitrator reviewed testimony and documentary evidence, but did not observe the assembly of the probes or establish a new standard rate of production.

Veeder-Root then appealed to the District Court, which vacated the arbitration award because the arbitrator failed to "establish a fair and equitable standard" as required by Paragraph 11.06 of the CBA and did not observe the job in question. The Union now appeals.

We have a very limited role in an appeal from "the decision of an arbitrator appointed pursuant to a collective bargaining agreement." Citgo Asphalt Ref. Co. v. Paper, Allied-Indus., Chem. and Energy Workers Int'l Union Local No. 2-991, 385 F.3d 809, 815 (3d Cir. 2004).

We do not review an arbitrator's decision for legal error, id., and will uphold an award "so long as it draws its essence from the collective bargaining agreement" and is not the arbitrator's "own brand of industrial justice." USWA v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960). "[O]nly where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award." Exxon Shipping Co. v. Exxon Seamen's Union, 73 F.3d 1287, 1295 (3d Cir. 1996) (quoting Super Tire Eng'g Co. v. Teamsters Local Union No. 676, 721 F.2d 121, 124 (3d Cir. 1983)).

Parties to a collective bargaining agreement "may . . . agree to allow an arbitrator to go beyond the express terms of the collective bargaining agreement. . . . by agreeing, separately, to submit specific issues to arbitration." High Concrete Structures, Inc. of N.J. v. United Elec., Radio and Mach. Workers Local 166, 879 F.2d 1215, 1218 (3d Cir. 1989). In High Concrete Structures, we rejected an employer's argument that an arbitrator violated an anti-revision clause in a CBA and upheld an award because the question the parties submitted was broad enough to grant the arbitrator the authority to revise the agreement and the alteration was rationally related to the issue submitted. Id. at 1216-19.

We explained that since "[a]n agreement to arbitrate is itself merely a contract . . . the court must look not only at the text of the collective bargaining agreement

4

but also at the agreed submission." Id. at 1219.  We also determined that the arbitrator's interpretation of the question submitted should be granted the same broad deference given to the interpretation of the agreement.  Id.  Thus, "the terms of the submission may empower an arbitrator to resolve disputes that go beyond the four corners of a collective bargaining agreement."  Id.; see also Larocque v. R.W.F., Inc., 8 F.3d 95, 98 (1st Cir. 1993).

Here, the submission of the parties asked the arbitrator to determine "whether or not the standard established and set by the Company is fair and reasonable or whether it is not reasonable in accordance with the provisions of the Labor Agreement." The arbitrator apparently concluded that the submission limited his assignment to answering the question submitted by the parties and therefore he did not "establish a fair and equitable standard" as required by the CBA.

The arbitrator's authority was controlled by both the terms of the submission and the CBA.  See High Concrete Structures, 879 F.2d at 1219. In carrying out his duties the arbitrator did not base his determination on his "own brand of industrial justice."  Enterprise Wheel & Car, 363 U.S. at 597.  Instead, he expressly relied on the standards set out in the CBA, which required new performance standards to be capable of being met at a performance level of 100, the equivalent to daywork pace at 100%.  The arbitrator noted that "[t]he parties to the Labor Agreement recognized the principle and theory of using normal pace in the development of standards when they

5

adopted [the CBA]." He ultimately determined that the employer's new production rate did not satisfy that standard because it was based on inadequate time studies.

The arbitrator reached his well-reasoned decision after considering testimony and documentary evidence and evaluating it in light of his extensive experience as an industrial engineer and knowledge of time study standards. His failure to observe the job does not affect the integrity of the award because the employer agreed to the limited submission.

The award was within the terms of the submission and drew its essence from the terms of the CBA. The arbitrator's decision properly reflected the realities of the collective bargaining process. See United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987) (In reviewing an arbitration, "it must be remembered that grievance and arbitration procedures are part and parcel of the ongoing process of collective bargaining.").

We will reverse the District Court's order vacating the arbitrator's award and enter judgment for the Union.