The MADISON HOTEL, Plaintiff,

v.

HOTEL AND RESTAURANT EMPLOYEES LOCAL 25, AFL–CIO, Defendant.

Civil Action No. 96–01433 (SS).

United States District Court, District of Columbia.

Dec. 17, 1996.

Jonathan W. Greenbaum, David, Hagner, Kuney & Krupin, P.C., Washington, DC, for Madison Hotel.

Mady Beth Gilson and Francis R.A. Sheed, Bredhoff & Kaiser, P.L.L.C., Washington, DC, for Hotel and Restaurant Employees, Local 25 AFL–CIO.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter is before the Court on cross-motions for summary judgment. Plaintiff requests that the Court set aside and vacate a June 6, 1996 arbitration award, which was granted after the Arbitrator concluded that plaintiffs laid-off several "bus" employees in violation of a collective bargaining agreement. Defendant requests that the Court enforce the award.

### Factual Background

In July 1992, the plaintiff Madison Hotel ("Hotel") laid off its entire staff of "bus" employees, consisting of 12 people. The lay off was based upon the Hotel's decision to eliminate its bus positions and have its waiters combine bus duties with their waiter duties. Eight of the laid off bus employees brought a grievance to arbitration through the defendant Hotel and Restaurant Employees Local 25 ("Union"). Of those eight, six had been working for the hotel for more than fifteen years, and four for more than twenty years. The basis of the bus employees' grievance was their claim that the lay-offs violated the collective bargaining agreement.

On January 2, 1994,[1] the Arbitrator issued a 20–page opinion concluding that

> the Hotel violated the layoff, seniority and classification provisions of the Agreement ... insofar as it eliminated completely the Bus Employee classification, laid off all of the Bus Employees and transferred the substantial remaining Bus Employee duties to the Waiters, in the absence of a demonstrated business reason and good faith.

Opinion of Arbitrator, Jan. 2, 1994 at 14. The Arbitrator went on to describe a balancing test that should have been applied before deciding to lay-off employees with many years of service to the Hotel.

> [I]t properly may be implied in the absence of express restrictions elsewhere in the Agreement, that the Hotel can reassign duties from one position to another, even to the extent of completely eliminating one position. Management's legitimate rights in this area, however, must be balanced against those provisions which are of great importance to the employees who have worked at the Hotel for many years, i.e., provisions which afford employees rights in the matters of seniority, classification, layoff protections, retention of seniority following a layoff, etc.

*Id.* at 15. As a remedy, the Arbitrator directed the Hotel "to reinstate the Grievants to their former positions and make them whole for all losses."

Subsequent to the issuance of the Arbitrator's opinion, the former bus employees, instead of reclaiming their positions, made a financial or other settlement with the plaintiff. Notwithstanding the settlement with the existing bus employees, the Union insisted that the Hotel was still required to restore the bus positions, even if that meant hiring new employees.

In a February 6, 1995 letter to the parties, the Arbitrator clarified his opinion in light of the grievants' resolution of their individual claims. The Arbitrator interpreted his original remedy as a two-part process: first, the hotel was to restore the bus positions and second, it was to reinstate the grievants to those positions. The Arbitrator went on to state that:

> At the point of offering each identified Grievant reinstatement to the restored Bus Employees positions, if any such offer to fill one of these restored positions is not accepted by a Grievant, such restored position becomes a vacancy subject to being filled in accordance with the applicable provisions of the Agreement. A restored position cannot be eliminated solely because a Grievant elected not to accept the offer to be reinstated in such position.

Arbitrator's February 6, 1995 letter at 2. The Arbitrator continued to retain jurisdiction to resolve any outstanding remedial issues.

The Hotel chose not to comply with the Arbitrator's direction that it restore the bus positions. As a result, the Union filed an action in this Court seeking to enforce his order. Civil Action No. 95–734(SS). Because the Arbitrator had not issued a final remedial order, the Court dismissed the Union's action as not ripe for adjudication. The parties were directed to return to the Arbitrator.

On June 6, 1996, the Arbitrator issued a final order, directing, *inter alia,* that the Hotel restore the bus positions. The plaintiff Hotel filed this action on June 20, 1996 seeking to vacate the arbitration award. On July 9, the defendant Union filed an answer and counterclaim, seeking to enforce the arbitration award. The parties agree that there is no genuine issue of material fact and that this issue may be properly decided by summary judgment.

### Analysis

▮▮▮ Review of an arbitrator's decision begins with the so-called *Steelworkers* Trilogy. *Office and Professional Employees International Union, Local 2 v. WMATA,* 724 F.2d 133, 139 (D.C.1983) (*citing United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424

---

**1.** The opinion is actually dated "January 2, *1993.*" However, all of the parties and the arbitrator himself subsequently refer to it as the January 2, *1994* decision. The Court therefore assumes that "1993" was a typographical error.

(1960); *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). The Steelworkers Trilogy and its progeny permit the Court to make three inquiries: (1) was the award arbitrary and capricious; (2) was the award sufficiently definite to allow enforcement; (3) did the arbitrator exceed the scope of his jurisdiction? *Id.* at 140. In assessing the last element, an arbitrator's decision may be reversed if the award does not draw its essence from the collective bargaining agreement or from the "law of the shop," or if the arbitrator grossly deviates from his conferred authority or from the issues submitted for arbitration. *Id.*

Without addressing the first two prongs of the Trilogy, the Court concludes that in this case the Arbitrator has exceeded the scope of his jurisdiction, both by deviating from the issues submitted for arbitration and by issuing an award that does not draw its essence from the parties' agreement.

### Deviation from the issues submitted for arbitration

■ In his original opinion, the Arbitrator defined the issue before him as

Whether the Hotel violated the Agreement by its abolishment of the Bus Employee position, its transfer of the duties of the Bus Employees to other positions and its layoff of the grievants in July 1992 and, if so, what is the appropriate remedy?

Opinion of Arbitrator, Jan. 2, 1994 at 2. Clearly, the "layoff of the grievants" issue was resolved when the grievants decided for monetary or other considerations that they no longer wanted their positions back. In his final decision, however, the Arbitrator decided the issue was one with broader application, holding that even without the individual grievants in the case, the Union has the right to demand that the hotel restore the bus employee positions. The Court does not agree with this interpretation. It is clear from the very first paragraph of the arbitrator's January 1994 decision that the grievants in this matter are the employees who were laid off. As the Arbitrator states, the Union brought the complaint *"on behalf of"* those laid-off employees. Opinion of Arbitrator, Jan. 2, 1994 at 1. Once those grievants left the case, there was no outstanding "issue" and thus there was no case to arbitrate.

### Failure to draw essence from agreement

■ It is apparent from the Arbitrator's own analysis in his January 1994 opinion that his June 1996 award did not draw its essence from the collective bargaining agreement. In January 1994, the Arbitrator recognized that nowhere in the collective bargaining agreement is it expressly stated that the Hotel must have bus employees. Rather, the decision to order the Hotel to rehire the laid-off staff was a balance between management rights and seniority rights. Balancing these interests, the Arbitrator concluded that the Hotel could not avoid the ramifications of long-term employees' seniority rights by simply eliminating the positions they held.

In upholding the rights of the long-term bus employees, the Arbitrator's January 1994 decision was well grounded in law and equity. When those employees settled their claims with Plaintiff for monetary or other considerations, the arbitration was successfully concluded. All existing bus employees' employment grievances had been satisfactorily resolved. In taking the next step and ordering the plaintiff to maintain the bus positions and to hire new bus employees, the Arbitrator went too far. The Arbitrator attempts to justify his decision to order the recreation of the bus positions by citing the rights of waiters with seniority to have a fall-back position, should the hotel decide to lay-off waiters. But the waiters are not before the Arbitrator. If waiters are laid-off, and if they claim that their seniority rights are violated by the lack of bus positions to transfer into, they can bring their own grievance.

### Conclusion

This is a case involving excesses by both management and the Union. First, the Hotel clearly violated the collective bargaining agreement, as found by the Arbitrator, when it laid off all of its bus employees, including some who had been with the Hotel for 15–20 years. In addition to violating the collective

bargaining agreement, the Hotel's actions were callous and insensitive. By the Union's advocacy, and with the Arbitrator's January 1994 award, the Hotel's erroneous decision was remedied. Although none chose to return to the bus position, every laid-off employee reached a satisfactory settlement with management. At this point, the dispute should have been over and the Hotel should have been allowed to implement its workplace decision to combine the bus and waiter duties into one position.

For reasons that are not entirely clear, after settling the individual grievances, the Union decided to continue to pursue the controversy. It did so by requesting that the Arbitrator issue an order requiring the Hotel to maintain bus positions, even though there were no longer any existing bus employees to fill them. The Arbitrator, in upholding the Union's claim, went too far. The collective bargaining agreement certainly gives the Hotel the right to make management decisions. *See Hotel Association Agreement,* Article IV, § 4.5 ("Management Rights Clause"). There is nothing in the agreement that transfers management's entrepreneurial decisions from it to the Union. It is the Hotel's, not the Union's, capital that is on the line. If it is going to remain viable, our free enterprise system must allow management to make these kinds of decisions. In this dynamic and competitive world economy, this nation no longer has the luxury to engage in these kinds of "featherbedding" practices.

At this point in the controversy, the law and equities have clearly shifted from the Union to the Hotel. It is somewhat mystifying to this Court why the Union, which represents both bus employees and waiters, is pursuing this course. Since every long- and short-term employee has been made whole, there was and is nothing left for the Arbitrator to decide. The Arbitrator clearly exceeded his authority in ordering that Management maintain the bus position and hire a certain number of new "bus" employees, notwithstanding Management's decision to abol-

ish the bus positions and transfer duties formerly performed by bus personnel to its waiters. Accordingly, the Court will grant Plaintiff's motion for summary judgment and vacate the Arbitrator's February 1995 clarification and June 1996 award and final remedy, insofar as they are inconsistent with this Memorandum Opinion.[2]

---

2. The Court will not vacate the January 2, 1994 award as requested by the Plaintiff. Although the January 1994 award is essentially moot in light of the grievants' decision to seek alternate remedies, there is no reason to believe that the award was improper at the time it was granted. What was improper were the portions of the Arbitrator's subsequent February 1995 clarification and June 1996 final remedy that required the Hotel to hire new bus employees.