United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued En Banc March 18, 1998 Decided June 2, 1998

 No. 96-7270

 Madison Hotel, 

 Appellee

 v.

 Hotel and Restaurant Employees, Local 25, AFL-CIO, 

 Appellant

 Appeal from the United States District Court 

 for the District of Columbia 

 (96cv01433)

 Jeremiah A. Collins argued the cause for appellant. With 
him on the briefs were Mady Gilson, David M. Silberman, 
and Francis R.A. Sheed.

 Jonathan W. Greenbaum argued the cause and filed the 
brief for appellee.


 Before: Edwards, Chief Judge, Wald, Silberman, 
Williams, Ginsburg, Sentelle, Henderson, Randolph, 
Rogers, Tatel, and Garland, Circuit Judges.

 Opinion for the Court filed by Circuit Judge Randolph.

 Opinion concurring in the judgment filed by Circuit Judge 
Henderson.

 Randolph, Circuit Judge: Hotel and Restaurant Employ-
ees, Local 25, AFL-CIO, appeals from the judgment of the 
district court vacating an arbitration award in Local 25's 
favor. We reverse.

 In July 1992, the Madison Hotel laid off its bus employees, 
abolished the bus employee classification, and reassigned the 
bus duties to the Hotel's waiters. The layoff prompted a 
dispute with Local 25, the union representing the Hotel's food 
and beverage employees. The dispute proceeded to arbitra-
tion. In a January 1994 opinion, the arbitrator found that the 
Hotel "violated the layoff, seniority and classification provi-
sions of the [collective bargaining agreement], ... insofar as 
it eliminated completely the Bus Employee classification, laid 
off all of the Bus Employees and transferred the substantial 
remaining Bus Employee duties to the Waiters, in the ab-
sence of a demonstrated legitimate business reason...." 
J.A. 31. The arbitrator directed the Hotel "to reinstate the 
[bus employees] to their former positions and to make them 
whole for all losses, including seniority, attributable to their 
improper layoff." J.A. 36.

 When all of the laid-off bus employees indicated that they 
no longer sought reinstatement to their former positions, the 
Hotel claimed the matter was at an end. Invoking the 
arbitration award, Local 25 insisted that the Hotel restore the 
bus employee classification and hire new employees to fill the 
positions. The parties returned to the arbitrator for clarifica-
tion, whereupon the arbitrator explained that his award re-
quired the Hotel "to reinstate the Bus Employee classification 
... [,] to fill the number of Bus Employee positions ... which 
existed at the time of the layoff and to operate with such Bus 
Employee classifications until it can demonstrate an appropri-


ate basis, under the [collective bargaining agreement], to 
abolish such positions." J.A. 49.

 The Hotel then sued to vacate the award. The district 
court granted summary judgment in the Hotel's favor. 
Among other things, the district court found that, because the 
original grievance was filed "on behalf of" the bus employees, 
arbitration extended only to whether the rights of those 
employees had been violated; accordingly the arbitrator ex-
ceeded his authority in ordering the Hotel to restore the bus 
classification. Madison Hotel v. Hotel & Restaurant Em-
ployees Local 25, 955 F. Supp. 1 (D.D.C. 1996).

 We believe the district court had no adequate basis for 
disagreeing with the arbitrator's view of what was before him 
for decision. In his first opinion, the arbitrator framed the 
dispute this way: "Whether the Hotel violated the Agreement 
by its abolishment of the Bus Employee position, its transfer 
of the duties of the Bus Employees to other positions and its 
layoff of the Grievants in July 1992 and, if so, what is the 
appropriate remedy?" J.A. 19. Given this statement, the 
arbitration encompassed not only the propriety of the Hotel's 
laying off the bus employees, but also its abolishing the bus 
classification and transferring the bus employees' duties to 
the waiters. The "scope of the arbitrator's authority is itself 
a question of contract interpretation that the parties have 
delegated to the arbitrator." W.R. Grace & Co. v. Local 
Union 759, Int'l Union of United Rubber, Cork, Linoleum & 
Plastic Workers of America, 461 U.S. 757, 765 (1983). An 
arbitrator's view of the issues submitted to him for arbitra-
tion therefore receives the same judicial deference as an 
arbitrator's interpretation of a collective bargaining agree-
ment.1 See, e.g., Sheet Metal Workers' Int'l Ass'n Local 

________

 1 This question--the scope of the submission to the arbitrator--
should not be confused with the question of arbitrability--whether 
the employer and the union agreed in the collective bargaining 
agreement to put a particular issue to arbitration. The latter 
question is reviewed by a federal court de novo. See, e.g., Williams 
v. E.F. Hutton & Co., 753 F.2d 117, 119 (D.C. Cir. 1985); Davis v. 


Union No. 359 v. Madison Indus., 84 F.3d 1186, 1190 (9th 
Cir. 1996); Richmond, Fredericksburg & Potomac R.R. v. 
Transportation Communications Int'l Union, 973 F.2d 276, 
280 (4th Cir. 1992); El Dorado Technical Servs., Inc. v. 
Union General De Trabajadores de Puerto Rico, 961 F.2d 
317, 321 (1st Cir. 1992); Lattimer-Stevens Co. v. United 
Steelworkers of America, Dist. 27, Sub-Dist. 5, 913 F.2d 1166, 
1170 (6th Cir. 1990); Mobil Oil Corp. v. Independent Oil 
Workers Union, 679 F.2d 299, 302 (3d Cir. 1982); Waverly 
Mineral Prods. Co. v. United Steelworkers of America, Local 
No. 8290, 633 F.2d 682, 685-86 (5th Cir. 1980). The Hotel 
has identified nothing to cast the slightest doubt on the 
arbitrator's judgment about the scope of this arbitration. 
The Hotel conceded at oral argument that there is no record 
of any formal "submission" of issues for arbitration.2 As is 
commonplace in arbitration proceedings, the scope of the 
issues developed informally during the course of the parties' 
presentations. See, e.g., Elkouri & Elkouri, How Arbitration 
Works 323-24 (5th ed. 1997). The Hotel never objected to 
the arbitrator's framing of the issue in his first written 
opinion, and it said so at oral argument.3

________

Chevy Chase Fin. Ltd., 667 F.2d 160, 166-67 (D.C. Cir. 1981). The 
former, as we have just indicated, is not. 
 2 Counsel for the Hotel acknowledged that the submission "was 
an oral submission to the arbitrator which is set forth in his 
opinion." When the Court asked whether this meant that "the 
submission" could only be defined by reference to "the arbitrator's 
definition of the grievance and the issue," counsel answered, "That's 
correct." 

 33%B5The Court:"Where is it, in all these documents, that you say to the arbitrator, 'Hey,
you can't arbitrate the abolishment of the classification'?"
Counsel:"We haven't set that out."
The Court:"Was there some argument ... in the arbitration where you said to the
arbitrator ..., 'You're not understanding this correctly, that's not before you'?"
Counsel:"No Your Honor." 


 A copy of Local 25's initial grievance letter to the Hotel, 
submitted to us on appeal, recites the union's objection to the 
Hotel's layoff of one of the bus employees. The letter's 
caption reads, "Re: Bus Employees/Local 25 Members," and 
its first sentence states: "This is to advise you that the Hotel 
& Restaurant Employees Local 25, AFL-CIO, pursuant to 
our collective bargaining agreement is opposing and taking to 
arbitration the action taken by your establishment against the 
above-captioned employee." We place no weight on this 
letter. As both parties now concede, the letter did not 
purport to encompass all the questions the parties intended to 
place before the arbitrator; its function was to set the 
informal arbitration process in motion.4

 Quoting from the first paragraph of the arbitrator's opin-
ion, the district court thought it significant that Local 25 had 
initiated arbitration "on behalf of" the former bus employees, 
the theory being that the only permissible remedy could run 
to them. The quoted language will not bear the weight the 
district court placed on it. From the second paragraph of his 
opinion onward, the arbitrator treated the Hotel's unilateral 
abolishment of the bus employee classification as a chief topic 
of dispute between the parties. This firmly indicates what 
the parties believed they were arbitrating, and what the 
arbitrator believed he had been called upon to resolve.

 The district court also found that the arbitrator's June 1996 
final award "did not draw its essence from the collective 
bargaining agreement." Madison, 955 F. Supp. at 3. The 
Hotel thinks this is correct because the arbitrator improperly 
considered some contractual provisions while ignoring others, 

________

 4 Counsel for Local 25 stated that the "letter ... is not 
regarded as a jurisdictional type of document," that it "was sent to 
the employer to initiate the proceedings," and that "there is abso-
lutely nothing in the parties' contract which says that that letter ... 
defines the limits of the arbitrator's authority in a subsequent case." 
Counsel for the Hotel agreed, noting that "the first step in the 
[arbitration] process is the filing of a grievance, which is what this 
letter is," and that the grievance letter "just gets us to the 
arbitration arena." 


and because he imposed "extra-contractual" obligations on 
the Hotel. Of course, an arbitration award that fails to draw 
its essence from the collective bargaining agreement cannot 
stand. See United Steelworkers of America v. Enterprise 
Wheel & Car Corp., 363 U.S. 593, 597 (1960). While courts 
therefore may review the substance of an arbitration award, 
only the narrowest circumstances will justify setting the 
award aside. An arbitrator cannot, for instance, "render[ ] a 
judgment based on external legal sources, wholly without 
regard to the terms of the parties' contract." American 
Postal Workers Union v. United States Postal Serv., 789 F.2d 
1, 8 (D.C. Cir. 1986). Nor can an arbitrator simply ignore the 
contract and "dispense his own brand of industrial justice." 
Enterprise Wheel, 363 U.S. at 597. But if an arbitrator was 
"arguably construing or applying the contract," a court must 
defer to the arbitrator's judgment. United Paperworkers 
Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). Courts 
"have no business ... determining whether there is particu-
lar language in the written instrument which will support the 
claim" submitted for arbitration. United Steelworkers of 
America v. American Mfg. Co., 363 U.S. 564, 568 (1960). The 
arbitrator's June 1996 final remedy falls well within the 
bounds of this deferential standard. In a series of thorough 
opinions explicitly considering the relevant contract provi-
sions, the arbitrator decided upon the remedy of restoring the 
bus classification. That the arbitrator gave more weight to 
some provisions--such as the seniority and classification pro-
visions--and less weight to others--such as the Management 
Rights Clause--than the district court or the Hotel might 
have preferred is not a permissible basis for vacating the 
award. It should hardly need repeating that "courts have no 
business overruling [an arbitrator] because their interpreta-
tion of the contract is different from his." Enterprise Wheel, 
363 U.S. at 599; see United States Postal Serv. v. National 
Ass'n of Letter Carriers, 789 F.2d 18, 20 (D.C. Cir. 1986). 
The "parties having authorized the arbitrator to give meaning 
to the language of the agreement," courts cannot "reject [the] 
award on the ground that the arbitrator misread the con-
tract." Misco, 484 U.S. at 38.


 As to the Hotel's complaint about the arbitrator's imposing 
"extra-contractual" obligations, it is well-established that the 
"labor arbitrator's source of law is not confined to the express 
provisions of the contract." United Steelworkers of America 
v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581 (1960). 
The parties' past practice, the "industrial common law" of the 
hotel business, the structure of the contract as a whole--all of 
these matters could be properly considered by the arbitrator 
in interpreting the contract and formulating the award. See 
id. at 581-82; Enterprise Wheel, 363 U.S. at 597; American 
Postal Workers, 789 F.2d at 5; see generally Elkouri & 
Elkouri, supra, at 470-515. An arbitrator's familiarity and 
experience with such matters is commonly acknowledged as 
one of the primary considerations favoring judicial deference 
to arbitration awards. See, e.g., Warrior & Gulf, 363 U.S. at 
582. In this case it is enough to sustain the award that the 
arbitrator, permissibly drawing on the sources just mentioned 
as well as on the explicit provisions of the contract itself, 
"purport[ed] to be interpreting the contract" in rendering his 
final decision. Utility Workers Union of America, Local 246 
v. NLRB, 39 F.3d 1210, 1216 (D.C. Cir. 1994).

 The district court erred in concluding that the arbitrator's 
final remedy exceeded the scope of the issues presented to 
him for arbitration and did not draw its essence from the 
collective bargaining agreement. Accordingly, the decision of 
the district court is reversed.

So ordered.



Karen LeCraft Henderson, Circuit Judge, concurring in the 
judgment:

 I agree that the district court should be reversed but on 
the narrow ground that the Hotel failed to object before the 
arbitrator to restoration of the eliminated bus positions--the 
issue on which Local 25 sought clarification. See 12/14/94 
Letter from Union Requesting Clarification from Arbitrator 
(JA 87-89).1 By not objecting to submission of the restora-
tion issue to the arbitrator, the Hotel waived its right to 
challenge in court the scope of the submission and the 
arbitrator's authority thereunder to resolve the issue.2 Cf. 
Davis v. Chevy Chase Fin. Ltd., 667 F.2d 160, 165 (D.C. Cir. 
1981) (finding no waiver because party "did ... raise the 
arbitrability question" before arbitrator "with full reservation 
of his right to have the arbitrator's determination subjected 
to judicial review"); see also United Industrial Workers v. 
Government of the Virgin Islands, 987 F.2d 162, 168 (3d Cir. 
1993) ("[B]ecause arbitrators derive their authority from the 
contractual agreement of the parties, a party may waive its 
right to challenge an arbitrator's authority to decide a matter 
by voluntarily participating in an arbitration and failing to 
object on the grounds that there was no agreement to arbi-
trate."); Jones Dairy Farm v. Local No. P-1236, United 
Food & Commercial Workers Int'l Union, 760 F.2d 173, 175 
(7th Cir.), cert. denied, 474 U.S. 845 (1985); George Day 
Constr. Co. v. United Bhd. of Carpenters & Joiners of Am., 
Local 354, 722 F.2d 1471, 1475-76 (9th Cir. 1984); Piggly 
Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Opera-
tors' Warehouse Indep. Truck Drivers Union, Local No. 1, 
611 F.2d 580, 584 (5th Cir. 1980). Once the bus positions 
were restored, they became, as the arbitrator observed unex-

________

 1In opposing Local 25's clarification request, the Hotel's counsel 
argued only that the arbitrator lacked authority to fill the restored, 
but vacant, positions. See Letter from Hotel Counsel to Arbitrator 
in Opposition to Union Clarification Letter at 1 (JA 90) (whether 
"the hotel must hire new buspersons to fill the classification" "is not 
before the arbitrator"). 

 2Waiver was not argued to the initial panel. 


ceptionably, "subject to being filled as vacancies in accor-
dance with the [Collective Bargaining] Agreement." 6/6/96 
Clarification Letter at 3 (JA 43) (quoting 2/6/95 Clarification 
Letter at 3 (JA 40)). The arbitrator was therefore justified in 
directing the Hotel to "fill" and "operate with" the restored 
busing positions "until it can demonstrate an appropriate 
basis under the Agreement, to abolish such positions." Id. at 
9 (JA 49). Given the Hotel's waiver, there is no need to 
explore here the metes and bounds of arbitral authority, as 
the majority has done. Since the majority has chosen to do 
so, however, I will respond briefly.

 First, it should be noted that our circuit is not always eager 
to enforce arbitration agreements so strictly. See Cole v. 
Burns Int'l Sec. Servs., 105 F.3d 1465, 1489 (D.C. Cir. 1997) 
(holding arbitration agreement binding on Title VII plaintiff 
only if employer agrees to pay arbitration costs). Second, I 
do not agree with the majority's assertion that there is 
"nothing to cast the slightest doubt on the arbitrator's judg-
ment about the scope of this arbitration." Majority Op. at 4. 
The arbitrator's first decision, on the merits, treated the 
arbitration as having been brought on behalf of and to 
provide a remedy for the named grievants only--a view the 
arbitrator acknowledged in each of the clarification letters. 
See 2/6/95 Clarification Letter at 2 (JA 39) ("The Arbitrator 
notes that the remedy set forth in the [January 2, 1994] 
Opinion contemplated reinstatement of, and a make whole 
award to, the identified Grievants only. That is, nothing in 
this Arbitration proceeding raised, or was intended to resolve, 
any issue with respect to any potential remedy to any individ-
uals other than the identified Grievants.") (emphasis added); 
6/6/96 Clarification Letter at 8 (JA 48) ("[I]t is correct that 
the Arbitrator, in finding the violation, balanced Manage-
ment's right to manage, including the right to determine 
staffing, against the Grievants' seniority rights ....") (em-
phasis added). The tenor of the merits decision presumably 
reflects the intent of the parties at that time, as expressed in 
their briefs and at the hearing. And the scope of an arbitra-
tor's authority is limited to those subjects the parties intend 
to submit to arbitration. See Williams v. E.F. Hutton & Co., 


753 F.2d 117, 119 (D.C. Cir. 1985) ("There is no duty to 
arbitrate matters not subject to the arbitration agreement, 
and no authority on the part of arbitrators to consider 
matters not necessary to the resolution of disputes actually 
submitted.") (citing Davis, 667 F.2d at 165) (emphasis added); 
Washington-Baltimore Newspaper Guild, Local 35 v. Wash-
ington Post Co., 442 F.2d 1234, 1236 (D.C. Cir. 1971) ("In 
determining the scope of an arbitrator's authority we look to 
two sources: the collective bargaining agreement, and the 
submission of the parties to the arbitrator.") (emphasis add-
ed); Matteson v. Ryder Sys. Inc., 99 F.3d 108, 114 (3d Cir. 
1996) ("[T]he touchstone for interpreting a submission must 
be the intention of the parties."). If an arbitrator oversteps 
the authority delegated by the parties, it is the duty of the 
reviewing court to rein him in. See Matteson v. Ryder Sys. 
Inc., 99 F.3d at 1113-15 (reversing arbitral decision "[b]e-
cause the [arbitral tribunal] exceeded its authority as arbitra-
tor by deciding issues not submitted to it by the [parties]"); 
John Morrell & Co. v. Local Union 304a of the United Food 
& Commercial Workers, 913 F.2d 544, 559-61 (8th Cir. 1990) 
(affirming district court determination that arbitral decision 
was beyond scope of issues submitted because appellate court 
was "satisfied that the arbitrator was not 'even arguably ... 
acting within the scope of his authority' "), cert. denied, 500 
U.S. 905 (1991); Bowater Carolina Co. v. Rock Hill Local 
Union No. 1924, 871 F.2d 23 (4th Cir. 1989) (directing district 
court to vacate decision on issue not submitted by parties); 
Courier-Citizen Co. v. Boston Electrotypers Union No. 11, 
702 F.2d 873, 830-31 (1st Cir. 1983) (vacating district court 
order enforcing back pay award to employee not mentioned in 
submission). Nonetheless, because the Hotel failed to object 
before the arbitrator to the expanded scope of the arbitration, 
it has waived any right to do so now.